IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEVEN MARK HAYDEN,              )
                                 )
      Plaintiffs,               )
                                 )
v.                               )       CASE NO.  2:15-cv-469-WKW
                                 )
ROBERT S. VANCE, JR., *et al.*,  )
                                 )
      Defendants.               )

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 2, entered July 6, 2015).   Now pending before the Court are six motions to dismiss filed by the various defendants (Docs. 24, 25, 35, 37, 42, and 50).   The motions are fully submitted and ripe for review.   For good cause shown, the Magistrate Judge recommends that the federal claims be dismissed with prejudice, the Court decline supplemental jurisdiction, and deny plaintiff's remaining motions as discussed within this opinion.

## I. BACKGROUND

On July 2, 2015, Plaintiff Steven Mark Hayden ("Plaintiff" or "Hayden") filed the complaint in this case identifying grievances against a plethora of individuals who were involved in an underlying state court case.   *See* Doc. 1; *Cashion, et al v. Hayden*, CV 2012-000209.00 (Cir. Ct. Jefferson County, Ala).   He filed suit in his individual capacity and as the trustee of the William B. Cashion Nevada Spendthrift Trust.   This recent case is one of many filed by Hayden which relate to a dispute between William Cashion and Hayden regarding Cashion's asserts and a Nevada trust.   In his complaint, Hayden spends a great deal of time writing about alleged

wrongs throughout history, conspiracies, and the improper and illegal establishment of a Commercial Litigation Docket ("CLD") in the Birmingham Division of the Circuit Court for the Tenth Circuit of Alabama.  *See* Doc. 1.

In the instant complaint, Plaintiff clearly outlines four separate counts in his complaint. Count I asserts violations of his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983.  *See* Doc. 1 at p. 22-23.  Specifically, he argues Defendants deprived him of due process under the color of law when he was unlawfully subjected to the CLD and the orders stemming from the case assignment.  He seeks a declaratory judgment that the state court actions were entered without authority and jurisdiction. *Id*. at p. 23.  Next, Plaintiff asserts fraudulent suppression whereby he states Defendants concealed/suppressed the fact the CLD was not properly certified under the law and they violated a duty to disclose that information during his state court proceeding.  He seeks damages caused by the alleged unlawful behavior.  *Id*. at p. 23-24.  Plaintiff's third claim is for the state tort of civil conspiracy.  *Id*. at p. 24.  He again asserts damages and seeks a judgment against each individual defendant in the amount of $20,000,000.00 for compensatory and punitive damages as well as interest and costs.  Finally, Plaintiff asserts a state law claim for negligence.  *Id*. at p. 24.  As part of this claim, he reasserts the duty to disclose the CLD lack of certification and indicates a deliberate violation of Plaintiff's constitutional rights.  In summary, Plaintiff seeks an award of damages in the amount of $25,000,000.00 for lost principal and interests on assets wrongfully taken from Plaintiff.  He further seeks an injunction to (1) prevent Judge Vance from acting in the case, (2) prevent the CLD from taking any further action until properly certified, and (3) violating the Plaintiff's constitutional rights.  *Id*. at p. 26-27.

Plaintiff provides a list of all the Defendants in his original complaint.  He includes Anne-Marie Adams (Circuit Clerk of Jefferson County), J Scott Vowell (former presiding Judge of the 10th Circuit Court of Jefferson County), Houston L. Brown (presiding Judge of the 10th Circuit Court of Jefferson County), Robert S. Vance (10th Circuit Judge), Roy Moore (Chief Justice of the Alabama Supreme Court), James Allen Main (Justice of the Alabama Supreme Court), Alisa Kelli Wise (Associate Justice of the Alabama Supreme Court), Gregory Shaw (Associate Justice of the Alabama Supreme Court), and Lyn Stuart (Associate Justice of the Alabama Supreme Court). *See* Doc. 1 at p. 3 and Ex. A.   Exhibit A and p. 3 are contradictory as Exhibit A lists fewer defendants than within the complaint itself.  Moreover, on page 1 of his complaint, Hayden specifies "all government officials are sued in individual capacity not official capacity."  *Id*. at p. 1.  The Court determines to utilize the more exhaustive list listed within the complaint.  As such, Hayden also sues Thomas Francis Parker (Associate Justice of the Alabama Supreme Court), James Allen Main (Associate Justice of the Alabama Supreme Court), William B. Cashion, Western Steel Inc., Merchants Commercial Bank.  Next, Hayden adds several individuals requesting they be enjoined from supporting the unconstitutional CLD.  He names William C. Thompson (Court Civil Appeals Judge State of Alabama), Craig Sorrell Pittman (Court Civil Justice Appeals of State of Alabama), Terri Williham Thomas (Court Civil Appeals), Terry A. Moore (Court Civil Appeals Justice), and Scott Donaldson (Court Civil Appeals Justice).  Lastly, Hayden indicates the U.S. Department of Justice should be a party.  However, he clarifies that he seeks no damages or compensation from DOJ, but "only that they return to standard respecting judicial independence."  *See* Doc. 1 at p. 4.

Hayden filed an amended complaint on August 31, 2015.  *See* Doc. 33.  He adds several individuals who he later removes in a notice of dismissal on October 6, 2015.  *See* Doc. 49.  The

Clerk of Court dismissed those five defendants on October 13, 2015.  *See* Doc. 51.  As such, the Court need not address any of Plaintiff's claims against those individuals.  In his amended complaint, Hayden also drops his allegations against Roy Moore in his individual capacity, but adds claims against Roy Moore in his official capacity as Chief Justice of the Alabama Supreme Court.  *See* Doc. 33 at p. 2.  He also seemingly makes U.S. Attorney Joyce Vance a defendant though he does not name her in the listed defendants section.

In his amended complaint, Hayden again challenges the constitutionality of the establishment of the CLD and the referral of his case to this CLD docket.  He asserts conspiracies by the defendants to deprive him of assets and ownership of the Cashion trusts.  He begins using CLD and KKK interchangeably when describing the docket.  He alleges Judge Robert Vance conspired with his wife, U.S. Attorney Joyce Vance through their respective positions to use NSA records to coerce and corrupt the other Alabama judges.  He adds claims for a declaratory judgment under 28 U.S.C. §§ 2201-2202.  Plaintiff improperly attempts to incorporate all paragraphs from his original complaint.  Though incorporation of prior complaints does not constitute a properly filed independently standing amended complaint before this Court, the Court will nonetheless consider both sets of claims for the purposes of evaluating whether to dismiss the claims.  With regard to his sought declaratory judgment, he again focuses on the unconstitutional CLD and the orders as they pertain to his case.  *Id*. at p. 14. He also weaves in allegations of improper use of NSA recordings by the defendants.  *Id*.  Next, Hayden alleges interference with contractual relations.  *Id*. at p. 15.  Plaintiff avers multiple contracts existed between him and Defendants Western Steel Inc. and William Cashion.  He states these Defendants continue to interfere with those contracts which prevents him from performing as the Trustee for millions of dollars in assets.  For this claim, he demands judgment

in the amount of $20,000,000.00 (as compensatory and punitive damages) and all costs. *Id*. As his next claim, Hayden asserts violations of 42 U.S.C. § 1985 for conspiracy to deprive the Plaintiff from enjoying his constitutional rights in Jefferson County Circuit Court. *Id*. Once again tied to the establishment of the CLD, Hayden avers no black judges voted for the approval of the CLD and as a result he was harmed with loss of legal fees and loss of control of a bank account with $10,000,000.00. *Id*. at p. 16. He demands restoration of the funds from the account to him as well as a $20,000,000.00 judgment plus interest and costs. *Id*. at p. 16-17. Finally, Hayden asserts as his last claim another negligence claim where he says Defendants had a duty to support the United States Constitution and disclose information regarding the CDL in that it was not properly certified. *Id*. As a result, Plaintiff was defrauded of monies and interest. At the conclusion of his amended complaint, Plaintiff states he seeks $20,000,000.00 plus interest and costs. It is unclear from the pleading if he considers the $20,000,000.00 the total amount he seeks or if he seeks $20,000,000.00 for <u>each</u> claim. However, for the purposes of analyzing jurisdiction and failure to state a claim, whether it is $20,000,000.00 or some multiple of that number is immaterial at this time.

In sum, the claims the Court identifies through a review of the Complaint and Amended Complaint are as follows: (1) 42 U.S.C. § 1983 (14th Amendment violations), (2) fraudulent suppression, (3) state law claims for civil conspiracy, (4) state law claims for negligence, (5) interference with contractual relations, (6) 42 U.S.C. § 1985 (conspiracy to interfere with civil rights), (7) declaratory judgment regarding the illegality of the CLD, and (8) an injunction preventing any further rulings by the CLD in his case.

## II.   JURISDICTION

Hayden asserts claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as he brings claims for violations of the United States Constitution through 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  He further seems to assert the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the state law claims.

The Court also notes Plaintiff's Amended Complaint states he requests declaratory relief pursuant to 28 U.S.C. § 2201.  The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* is procedural in nature and is not an independent source of jurisdiction.  *Schilling v. Rogers*, 363 U.S. 666, 667 (1960).  As such, it is not a lynchpin for jurisdiction in this case.

Defendants challenge jurisdiction in their respective motions to dismiss which the Court will address if further detail below.

## III.   STANDARDS OF REVIEW

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Generally, complaints by *pro se* plaintiffs are read more liberally than those drafted by attorneys. *Osahar v. U.S. Postal Serv.*, 297 Fed. Appx 863, 864 (11th Cir. 2008).  Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted) (overruled on other grounds by *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)); *see also Giles v. Wal-Mart Distrib. Ctr.*, 359 Fed. Appx. 91, 93 (11th Cir. 2009) (internal citations and quotation omitted) ("Although *pro se* pleadings are held to a less strict standard than pleadings filed by lawyers and thus are construed liberally, this liberal

construction does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.").

Further, given the numerous motions, it is important to note there are four potential standards of review at issue: Rule 12(b)(1) facial attack, Rule 12(b)(1) factual attack, Rule 12(b)(6), and Rule 56.

## A.      Federal Rule of Civil Procedure 12(b)(1) – Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion directly challenges the district court's subject matter jurisdiction. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty*, 501 F.3d 1244, 1251 (11th Cir. 2007); *Gilmore v. Day*, 125 F.Supp.2d 468, 470 (M.D. Ala. 2000).   The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction.    *Gilmore*, 125 F.Supp.2d at 471 (citing *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L.Ed. 951 (1942)).   A motion to dismiss for lack of subject matter jurisdiction may occur either facially or factually.   *Makro v. Capital of America, Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)); *Stalley v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *McElmurray*, 501 F.3d at  1251).

A "facial attack" is based solely on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction.   *Stalley*, 524 F.3d at 1232-33; *Morrison*, 323 F.3d at 925 n. 5; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).   "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion -- the court must consider the allegations of the complaint to be true."  *Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)); *see also Houston v. Marod Supermarkets*, 733 F.3d 1323, 1335 (11th Cir. 2013) (The Court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter

jurisdiction" in the complaint and employs standards similar to those governing a Rule 12(b)(6) review.). The Court is "not required to accept mere conclusory allegations as true, nor are we required to accept as true allegations in the complaint that are contrary to factual details presented in the exhibits." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id*. at 1206. When discussing exhibits on a facial attack, the Court may consider exhibits attached to the complaint as well as those attached to a motion to dismiss. *Lawrence v. United States*, 597 Fed. Appx. 599, 602 (11th Cir. 2015). Exhibits attached to the complaint are considered part of the complaint for all purposes. *Id*. Further, exhibits attached to a motion to dismiss may be considered for a facial attack if the documents are central to the plaintiff's claim and their authenticity is not disputed. *Id*.

On the other hand, a "factual attack" challenges "subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison*, 323 F.3d at 925. On a Rule 12(b)(1) factual attack, the court "may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. *Lawrence*, 919 F.2d at 1529. Further, in resolving a factual attack, the court "may consider extrinsic evidence such as testimony and affidavits." *Makro*, 543 F.3d at 1258 (quoting *Morrison*, 323 F.3d at 925 n. 5); *accord Stalley*, 524 F.3d at 1233; *Miccosukee Tribe of Indians of Florida v. U.S., E.P.A.*, 105 F.3d 599, 603 (11th Cir. 1997). The trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations." *Makro*, 543 F.3d at 1528 (internal quotations omitted); *see also Willett v. United States*, 24 F.Supp.3d 1167, 1173 (M.D. Ala. 2014) (stating same). In other words, "the district court should apply a summary judgment standard when ruling on the motion to dismiss as a

factual attack on subject matter jurisdiction." *Miccosukee Tribe*, 105 F.3d at 603 (citing *Lawrence*, 919 F.2d at 1530).

However, the Court is not at liberty to weigh the evidence when the factual attack "also implicates an element of the cause of action." *Lawrence*, 919 F.2d at 1529. The Eleventh Circuit has specifically cautioned district courts "should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action*." *Morrison*, 323 F.3d at 925 (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (internal quotations omitted and emphasis in original).

## B.    Federal Rule of Civil Procedure 12(b)(6) – Failure to State a Claim

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Gilmore*, 125 F. Supp.2d at 471. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v.*

*BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).[1]

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966.  Further, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (citations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S. Ct. at 1964-65 (citations omitted).  Factual allegations must be enough to raise a right to relief above the speculative level.  *Id.*  Thus, it does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id.* at 570, 127 S. Ct. at 1974.   It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery."  *Id.* at 561, 127 S. Ct. at 1968 (internal quotation and alteration omitted). Consequently, the threshold for a complaint to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

## IV. DISCUSSION AND ANALYSIS

The Court must first consider whether it has subject matter jurisdiction over this case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (stating that where "a Rule

---

[1]     In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

## A.    Trust Claims

At the outset, the Court first notes Hayden currently proceeds on the claims in his capacity as a Trustee.  Pursuant to 28 U.S.C. § 1654, Hayden may proceed *pro se* on his own behalf and as a non-attorney, he cannot engage in the practice of law on behalf of others.[2]  There is nothing in § 1654 or Fed. R. Civ. P. 17(c) which permits him to proceed *pro se* on behalf of the Trust.  The Eleventh Circuit has held on several occasions that 28 U.S.C. § 1654 prohibits a non-lawyer from representing another entity such as a corporation, trust, or estate.  *See, e.g., Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 609 (11th 1984); *Franklin v. Garden State Life Ins.*, 462 Fed. Appx. 928, 930 (11th Cir. 2012).  Hayden later claims he only seeks claims on his own behalf, but repeatedly references his status as the trustee.  Therefore, to be clear, any claims brought on behalf of the trust merit dismissal and the Court will only look to claims brought by Hayden on his own behalf.

## B.    Rooker-Feldman

The Rooker-Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 1311-15, 75 L.Ed.2d 206 (1983).  The Eleventh Circuit has described the Rooker-Feldman doctrine as follows:

---

[2]     28 U.S.C. § 1654 provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

> The Rooker-Feldman doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.

*Goodman ex. rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (citing *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000)).  The Supreme Court has noted the doctrine is narrow and is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L.Ed.2d 454 (2005); *see also Molina v. Aurora Loan Servs.*, 2015 U.S. App. LEXIS 20877 (11th Cir. Dec. 2, 2015) (quoting *Exxon Mobil*).  The doctrine is rooted in two statutes: (1) 28 U.S.C. § 1257, which limits review of state court proceedings to the United States Supreme Court and (2) 28 U.S.C. § 1331 which provides that federal district courts are courts of original, not appellate, jurisdiction.  In short, this Court cannot review and reverse a state court civil judgment.

"Application of Rooker-Feldman is a threshold jurisdictional matter."  *Cavero v. One W. Bank FSB*, 617 Fed. Appx. 928, 929 (11th Cir. 2015) (citing *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010).  For the Rooker-Feldman doctrine to apply, two factors must be satisfied: (1) the state court must have "rendered judgment before the district court proceedings commenced" and (2) the plaintiff must be a "state-court loser who is complaining of injuries caused by the state-court judgment."  *Cormier v. Horkan*, 397 Fed. Appx. 550, 552-53 (11th Cir. 2010).  Moreover, the doctrine applies to "both to federal claims

raised in state court and to those 'inextricably intertwined" with the state court's judgment." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).   "A claim filed in federal court is inextricably intertwined with a state court judgment if it would effectively nullify the state court judgment or if it succeeds only to the extent that the state court wrongly decided the issues." *Cavero*, 617 Fed. Appx at 930; *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262-63 (11th Cir. 2012).

Hayden specifically states he was deprived of due process when he was subjected to the CLD's jurisdiction.  *See* Doc. 1 at p. 22.  He further requests a declaratory judgment that the CLD is unconstitutional.   He also seeks monetary damages in the amount of at least $20,000,000.00.   Hayden's requests for an injunction and declaratory judgment fall squarely within the ambit of the Rooker-Feldman doctrine.  The documents attached to the motions to dismiss and a review of the Alabama court's public documents clearly establish that Hayden has a lengthy history in the Alabama state courts on these precise issues.  Hayden has repeatedly challenged the constitutionality of the Commercial Litigation Docket (CLD) in Jefferson County and the subsequent appellate courts.  Further, he wants the trial determination overturned.  It is clear he challenged these matters through the state trial and appellate courts and ultimately lost on August 8, 2014 when the Alabama Supreme Court affirmed the prior lower state court rulings.

The Eleventh Circuit has expressly rejected the use of § 1983 as a device for collateral review of state court judgments.  *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005).  As the Eleventh Circuit aptly noted "[federal courts] are not a clearinghouse for [Plaintiff's] overstock arguments; if he did not offer them to the state courts—or if the state courts did not buy them— he cannot unload them by attempting to sell them to us."  This is precisely the case we have here

as Hayden's requests for an injunction and declaratory judgment fall squarely within the ambit of the Rooker-Feldman doctrine. He seeks this Court's intervention in the unfavorable state court judgment and appeals. The Court finds his claims for damages also directly seek review and rejection of the state courts' determinations and are inextricably intertwined such that to even consider damages, the Court would have to determine the state court erred and overturn the state court decision. The court lacks jurisdiction in such matters.

## C.     Failure to State a Claim

However, even if the Court is wrong and Rooker-Feldman does not encompass the federal claims seeking damages, Hayden's federal claims for damages still merit dismissal for failure to state a claim under a Rule 12(b)(6) standard.

### i.     Section 1983 and 1985 Claims Against Private Actors (Defendants William B. Cashion, Western Steel Inc., Merchants Commercial Bank)

Even if Hayden's claims were not barred under Rooker-Feldman, the claims against the private defendants still fail because they are private citizens, companies, or corporations and not state actors as required under the statute. 42 U.S.C. § 1983 provides a remedy when a person acting under color of law deprives a plaintiff of a right, privilege, or immunity security by the Constitution, laws, or treaties of the United States. *See* 42 U.S.C. § 1983.[3] Taking the factual allegations of Hayden's complaint as true (which the court must do when performing a review under Rule 12(b)(6) review), Hayden complains that he was not given due process in the state court case. The Due Process Clause of the Fourteenth Amendment provides no state "shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend

---

[3]     Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

XIV, § 1. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 1050, 55 L. Ed. 2d 252 (1978). In this case, Hayden alleges a deprivation of property (i.e. the trusts at issue) by Defendants Cashion, Western Steel, Inc., and Merchants Commercial Bank without due process of law. *See* Docs. 1, 33.

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347-48 (11th Cir. 2006) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). The critical issue is whether the Defendants acted under color of state law or whether the alleged actions are fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 2754, 73 L.Ed.2d 482 (1982); *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

The law is clear that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003). Only in rare circumstances can a private party be viewed as a "state actor" for the purposes of an action under § 1983. For a private person such as these defendants to qualify as a "state actor" under § 1983, one of the three tests must be satisfied: (1) "State Compulsion Test" wherein the state has coerced or significantly encouraged the violative conduct; (2) "Public Function Test" wherein private parties perform a public function that is traditionally the exclusive prerogative of the state; and (3) "Nexus/Joint Action Test" wherein the state has insinuated itself into a position of interdependence with the private party, such that the state and private party are essentially joint

participants in an enterprise.   Applying these three tests, Hayden presents nothing which remotely establishes Defendants Cashion, Western Steel Inc., or Merchants Commercial Banks acted as state actors.  Rather, he makes conclusory statements about his conspiracy between all the defendants.

Under the "State Compulsion Test," Hayden's complaints do not state any government officials did anything to coerce or encourage these private Defendants to commit the alleged wrongful acts.  Rather, he argues that any coercion was government official against government official and the private defendants simply reaped the benefit.  Hayden argues that "clearly [these defendants] reached a understanding with Vance and other officials to deny Hayden a trial in Jefferson County and instead try him and give judgment from CLD."  *See* Doc. 32 at p. 3 (errors in original).  The mere fact a case was jurisdictionally held in the CLD does not itself present evidence of some sort of conspiracy or coercion of the Defendants to meet the State Compulsion Test.

The "public function analysis is a stringent test requiring a showing that private actors have been given powers or are performing functions that are 'traditionally the exclusive prerogative of the State." *Weaver v. James Bonding Co*., 442 F.Supp.2d 1219, 1224 (S.D. Ala. 2006) (quoting *Harvey*, 949 F.2d at 1131).  A private person or company exercising its access to courts and filing or responding to a lawsuit is certainly not the exclusive prerogative of the government.  As such, the Public Function Test is not met.

Finally, to satisfy the Nexus/Joint Action Test, "the governmental body and private party must be intertwined in a 'symbiotic relationship.'" *Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) (citations omitted).  Reading the facts in the light most favorable to Hayden, this is the only test potentially applicable to the facts.  This joint-engagement theory of § 1983 liability may

be referenced a § 1983 conspiracy.  *See Harvey*, 949 F.2d at 1133.  "Conspiring to violate another person's constitutional rights violates section 1983."  *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002) (citations omitted).  But, "an allegation that a private defendant misused a valid state statute does not state a cause of action under § 1983."  *Dye v. Radcliff*, 174 Fed. Appx. 480, 482 (11th Cir. 2006) (citing *Lugar*, 457 U.S. at 940-41, 102 S. Ct. at 2755-56).  "For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey*, 949 F.2d at 1133 (citing *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir.1984)).  A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory – it is not enough to simply aver in the complaint that a conspiracy existed.  *Fullman*, 739 F.2d at 556-57.  There are no facts pled which could be reasonably construed to create a specific § 1983 conspiracy claim against the three private Defendants.  Rather, Hayden's allegations are the epitome of "vague and conclusory."

This provides the segue to Plaintiff's claim under 42 U.S.C. § 1985 where he alleges all conspired to violate his right to a fair trial because of the conspiracy to put his case before the CLD.  Again, as noted previously, this necessarily implicates a Rooker-Feldman analysis, but to the extent he seeks damages, the Court will address out of an abundance of caution.

Under 42 U.S.C. § 1985, a party may be liable for conspiring to deprive persons of equal protection of the laws or equal privileges and immunities under the laws.  42 U.S.C. § 1985(3).  To state a § 1985 conspiracy claim, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly and indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that a person is either injured in his person or property or deprived of any

right or privilege of a citizen of the United States. *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001*); Lucero v. Operation Rescue of Birmingham*, 954 F.2d 624, 627-28 (11th Cir. 1992). Hayden's allegations regarding the existence of a conspiracy and Defendants' roles in the alleged conspiracy were vague, conclusory, and lacking in full support. *Fullman*, 739 F.2d at 556-57 (holding that in civil rights conspiracy actions, conclusory, vague and general allegations of conspiracy are insufficient to support a claim of conspiracy); *see also Ana Leon T. v Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir. 1987) ("The allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim."). He rambles about how the CLD is racially discriminatory. But, he fails to plead any particular facts which aid him in surviving a Rule 12(b)(6) motion to dismiss.

Therefore, the claims against Defendants Cashion, Western Steel, Inc. and Merchants Commercial Bank merit dismissal.

> **ii.    Federal Claims Against Defendants Anne-Marie Adams, Houston Brown, Scott Donaldson, James Allen Main, Terry A. Moore, Thomas Francis Parker, Craig Sorrell Pittman, Gregory Shaw, Lyn Stuart, Terri Willingham Thomas, William C. Thompson, Robert S. Vance, Jr., J. Scott Vowell, and Alisa Kelli Wise**

Hayden makes clear in his complaint that he sues all these defendants in their individual capacities. *See* Doc. 1 at p. 2, ¶ 6 ("ALL GOVERNMENT OFFICIALS ARE SUED IN INDIVIDUAL CAPACITY NOT OFFICIAL CAPACITY.") (emphasis and capitalization in original). To the extent Hayden tries to circumvent that through argument, the Court notes any claim against these defendants in their official capacities would merit dismissal as they are barred by Eleventh Amendment Immunity. Plaintiff would be well aware of this legal principle given that he tried asserting these claims previously against Robert Vance in the Northern District of Alabama. *See William B. Cashion Nevada Spendthrift Trust, Steven Mark Hayden v.*

*Robert Vance, Jr.*, Civ. Act. 2:13-cv-286-SLB.  Hayden was already informed by a federal judge and subsequent Eleventh Circuit affirmation that he could not bring such claims.  *See William B. Cashion Nevada Spendthrift Trust v. Vance*, 552 Fed. Appx. 884 (11th Cir. 2014); *William B. Cashion Nevada Spendthrift Trust v. Vance*, Civ. Act. 2:13-cv-286-SLB, 2013 U.S. Dist. 84967, 2013 WL 3151918 (N.D. Ala. 2013).  Therefore, given the clarity of the prior court rulings and Hayden's own clear emphasis of individual capacity claims the Court need not further discuss any official capacity claims with regard to these defendants.  The Court will discuss the official capacity claims against Roy Moore in a later section.

As for the individual capacity claims, the defendants all assert immunity from suit.  In addition, they also assert *res judicata* in light of *William B. Cashion Nevada Spendthrift Trust v. Vance*.  *Id*.  The 11th Circuit has explicitly rejected the use of § 1983 as a device for collateral review of state court judgments.  *Sibley*, 437 F.3d at 1070.   Further, the Supreme Court and progeny caselaw makes it clear that immunity is the standard and only overcome in two sets of circumstances.  "First, a judge is not immune from liability for nonjudicial actions, *i.e.* actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction."  *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288, 116 L.Ed.2d 9 (1991).

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996)).  "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Id*. (citing

*Stump*, 435 U.S. at 356, 98 S. Ct. 1099).  Whether a judge's actions were made while acting in a judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and/or (4) the confrontation arose immediately out of a visit to the judge in his or her judicial capacity.  *See, e.g., Sibley*, 437 F.3d at 1070; *Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983).

In the case involving Hayden, the allegations against all the judges (Houston Brown, Scott Donaldson, James Allen Main, Terry A. Moore, Thomas Francis Parker, Craig Sorrell Pittman, Gregory Shaw, Lyn Stuart, Terri Willingham Thomas, William C. Thompson, Robert S. Vance, Jr., J. Scott Vowell, and Alisa Kelli Wise) stem from the general actions they took in either Hayden's case at the trial or appellate level or their general support of the CLD.  Hayden alleges the referral of cases to the CLD and the judges' support of the CLD deprived him and others of their constitutional rights.  These clearly constitute judicial acts as they were acts which constituted a normal judicial function or related to a controversy involving a case pending before them.  To the extent he argues that the CLD is a sham court and the judges acted without jurisdiction, his argument fails.  Even if the CLD were determined to be jurisdictionally deficient, immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.  As such, judicial immunity applies and the claims involving these defendants merit dismissal.

With regard to Anne-Marie Adams – whom Hayden identifies as the Circuit Clerk of Jefferson County – quasi-judicial immunity bars those claims.  Quasi-judicial immunity extends to those servants and agents who facilitate the judicial process.  *See, e.g., Kipkirwa v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 145 F.3d 1338 (9th Cir. 1998) (affirming dismissal of claims against

federal judges and clerks on the grounds of absolute judicial immunity and quasi-judicial immunity); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to clerks of the court for tasks which are judicial in nature and an integral part of the judicial process or for administrative functions undertaken pursuant to explicit direction of a judicial officer or pursuant to established practice of the court); *Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812, 815 (10th Cir. 1981); *Jenkins v. Clerk of Court*, 150 Fed. Appx. 988, 990 (11th Cir. 2005) (unpublished) ("Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process. Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process."); *Hanner v. U.S. Gov't*, 660 F. Supp. 77, 78 (S.D. Miss. 1986) (recognizing that clerk has quasi-judicial immunity from suit).

Again Hayden complains about actions taken in the underlying state court. With regard to Defendant Adams, he does not seem to make a specific allegation against her, but merely against all the parties involved in the underlying state court proceeding. Therefore, as they relate to the actions she took as the Clerk of Court, she remains entitled to quasi-judicial immunity and the claims merit dismissal.

### iii.   Claims Against Defendant Roy Moore

Hayden initially made allegations against Roy Moore in his individual capacity; however, with his amended complaint, he removed the individual capacity claims and instead added only official capacity claims. *See* Doc. 1 at p. 2 ¶ 6; Doc. 33 at p. 2 ¶¶ 6-7. As previously noted, judges are entitled to absolute immunity pursuant to the Eleventh Amendment for claims asserted against them in their official capacity. As the only claims now made against Roy Moore

are official capacity claims for acts as Chief Justice of the Alabama Supreme Court, the claims warrant dismissal.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI; *see also Toth v City of Dothan, Ala.*, 953 F. Supp. 1502, 1506 (M.D. Ala. 1996) (citing Eleventh Amendment). Specifically, an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens unless Congress has abrogated immunity or the state has waived its immunity. *Id.* (citations omitted). Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, nor has Alabama waived its immunity. *See Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962, 148 L.Ed.2d 866 (2001). State officials "acting in their official capacities" are outside the class of "persons" subject to liability under § 1983. *Hafer v. Melo*, 502 U.S. 21, 22-23, 112 S. Ct. 358, 360-61, 116 L.Ed.2d 301 (1991) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990) (citing *Will*); *Toth*, 953 F. Supp. at 1507 (citing *Hafner* and *Will*).

A state elected judge (including the Alabama Supreme Court) clearly qualifies as a state officer. *See Caffey v. Ala. Supreme Court*, 469 Fed. Appx. 748, 751 (11th Cir. 2012). Roy Moore is the Alabama Supreme Court Chief Justice. As such, he would be immune from any suit against him in his official capacity for damages since he is not a "person" subject to liability under § 1983. *Id.* In light of the foregoing, Hayden's claims against Justice Moore for damages are also due dismissal for failure to state a claim for which relief can be granted.

### iv.      Claims Against Defendant Joyce Vance

It is not entirely clear if Hayden has named Defendant Joyce Vance as a defendant as she is not listed in Plaintiff's exhaustive list of defendants in either the original or amended complaint.  *See* Docs. 1, 33.  However, he does repeatedly reference Joyce Vance throughout his pleadings and also opposes her motion to dismiss.  *Id*.; Doc. 47.  As such, the Court will address the claims and the reason they merit dismissal.

Hayden alleges Defendant Joyce Vance accessed an NSA database which "has all the dirt and evidence on federal and state judges and their family" and then gave the information to her husband (Defendant Robert Vance) so they could "coerce cooperation with CLD."  *See* Doc. 1 at ¶¶ 64, 74.  In sum, he alleges the two Vance defendants improperly forced the other judges to violate the constitution by supporting the CLD.  *Id*. at ¶¶ 56-74.  As aptly noted in the motion to dismiss, Plaintiff lacks the standing to assert third party rights in order to find redress for his own injuries.  *Planned Parenthood v. Miller*, 934 F.2d 1462, 1465 n. 2 (11th Cir. 1991).  "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Kowalski v.  Tesmer*, 543 U.S. 125, 129, 125 S. Ct. 564, 567, 160 L.Ed.2d 519 (2004).  Though the rule is not absolute, Hayden does not meet the limited exception requirements – specifically that he has a "close" relationship with the person who possesses the right and whether there is a "hindrance" to the possessor's ability to protect his own interests.  *Id*. at 130, 125 S. Ct. at 567.  As such, he lacks standing to assert constitutional violations on behalf of the individual judges in order to seek redress for his own claims.

Further, to the extent Hayden seeks to engulf Joyce Vance into his generalized § 1983 claims, he cannot do so because she is a federal officer and not a state actor.  42 U.S.C. § 1983 is not the proper vehicle for suits against federal officials acting under color of federal law.  *See*

*Martin v. Heckler*, 773 F.2d 1145, 1152-53 (11th Cir. 1985); *Seibert v. Baptist*, 594 F.2d 423, 430 (5th Cir. 1979); *Roots v. Callahan*, 475 F.2d 751, 752 (5th Cir. 1975).  As such, Hayden fails to state a claim for relief as a matter of law.

> **v.     Claims Against Department of Justice**

Hayden in his original complaint lists the U.S. Department of Justice as a defendant when he states "the US Department of Justice should be a party in representing its actions powers and duties to obtain records of Federal Judiciary without proper judicial review.  But Plaintiffs seek no damages or compensation from US DOJ but only that they return to standard respecting judicial independence."  *See* Doc. 1 at p. 2, ¶ 31.  As Plaintiff makes clear he seeks no damages from DOJ, he appears to seek only declaratory or injunctive relief which as previously noted is barred by Rooker-Feldman.  To the extent that some other prospective relief is sought, Plaintiff fails to articular a specific claim which could meet pleading standards.   Therefore, the Department of Justice should be dismissed as a defendant.

**D.     Decline supplemental jurisdiction**

If the federal claims over which the Court has original jurisdiction are dismissed, the court may decline to exercise jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002).  As discussed above, all the federal claims merit dismissal.  Thus, the Court may (and in this case should) decline jurisdiction over the remaining state law claims for civil conspiracy, negligence, and interference with contractual relations.

**E.     Plaintiff's remaining motions**

Plaintiff also filed a number of his own motions.  *See* Doc. 1 (Request for Preliminary Injunction); Doc. 41 (Motion for Declaratory Judgment and Motion for Contempt); Doc. 53

(Motion for Contempt and Motion for Sanctions), and Motion to Amend Federal Complaint (Doc. 55).  As discussed above, his requests for preliminary injunction and declaratory judgment are barred by Rooker-Feldman.  Therefore, they are due to be denied.

### i.    Younger abstention doctrine

Plaintiff filed a motion for contempt (Doc. 41) wherein he continues to seek a preliminary injunction and requests this court hold the defendants in contempt for continuing to enforce CLD determinations in the underlying state court case.  He reiterates this point in his second motion for contempt and sanctions (Doc. 53).  He asserts the defendants are interfering with this court's jurisdiction to hear his case and they should be punished.  He alleges the defendants have attempted to harass, intimidate, threaten, and coerce the Plaintiffs.[4]  Hayden asserts the Defendants have sought his arrest and the arrest of his wife as punitive action for him filing this federal complaint and the defendants also demanded attorney's fees for defending the action in federal court.  He compares these actions to those employed by the Nazis during World War II, the U.S. Government in incarcerating whole tribes of Indians, and the American concentration camps for Japanese Americans during World War II.  He again reiterates his arguments about the invalidity and unconstitutionality of the CLD as a whole and states it is "lawless and run by corrupt agents."  *See* Doc. 53 at p. 7.  This appears to pertain to a current contempt proceeding against Hayden in state court.  *Id*.; *see also* Doc. 56, Notice of writs of arrest.  The order of contempt docketed by the Plaintiff shows that Alabama Circuit Judge Michael Graffeo determined Plaintiff and his wife repeatedly violated the Alabama State Court Permanent Injunction entered on August 20, 2013 as part of the Final Judgment in the underlying state court case.

---

[4]    The Court can only presume when Hayden states "Plaintiffs" he is including his wife in this generalized statement based on the context of the remainder of the motion and attachments.  The Court notes only Steven Hayden is a Plaintiff in this suit and therefore there is only one Plaintiff.

The permanent injunction, in short, requires that Hayden and his wife are permanently restrained and enjoined from taking any action with respect to the assets, property, affairs, interests, or estate of William B. Cashion to include his stock and interests in Western Steel, Western Properties, LLC, Merchants Commercial Bank, USVI, and 10:16 Mining Corporation. *See* Doc. 56, Atch 1, "Order of Contempt."  It further ordered that Hayden and his wife were prohibited from pursuing any cause of action against Cashion, et al, that attempts to assert or claim (directly or indirectly) that those asserts still belong to Hayden.  *Id*.  The contempt proceeding addressed the filing of this suit and another similar suit in the Circuit Court of Elmore County.  Judge Graffeo provides an excellent summary of the number of attempts Hayden has made in the state courts and his appeals to challenge the constitutionality of the CLD.  He notes at every turn, Plaintiff lost his appeal and notes they cannot attempt to re-litigate the same issue.  Based on the evidence heard at the contempt proceeding, Judge Graffeo found Plaintiff to be in contempt.  He further orders dismissal of all Plaintiff's remaining suits which collaterally attacked the original CLD ruling (as affirmed by the appellate and State Supreme Court).  Hayden has appealed those orders which are now pending before the Alabama Supreme Court.

The Court need not consider these matters as it already determined it lacked jurisdiction over the federal claims.  Further, the Court determines that by filing these motions, Plaintiff demands for this court to directly interfere with an ongoing state proceeding (i.e. the state court contempt proceedings).  *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) and its progeny reflect "the longstanding national public policy, based on principles of comity and federalism, of allowing state courts to try cases -- already pending in state court -- free from federal court interference."  *Butler v. The Ala. Judicial Inquiry Comm'n*, 245 F.3d 1257, 1261 (11th Cir. 2001).  The Supreme Court has set out three benchmarks to guide the application of

*Younger* abstention: (1) whether state proceedings constitute an ongoing state judicial proceeding; (2) whether the proceedings implicate important state interests; and (3) whether there exists an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521, 73 L. Ed. 2d 116 (1982); *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003).  It is clear that these motions pertain to an ongoing state judicial proceeding – an ongoing contempt proceeding for the violation of a state court injunction.  The proceedings implicate the important state court interest of enforcement of its own orders.  And, Hayden has adequate opportunity to raise this challenge to the Alabama Supreme Court where his case currently sits. *See Cashion, et al v. Hayden*, CV 2012-000209.00 (Cir. Ct. Jefferson County, Ala), Docket entries dated December 31, 2015 (Docs. 991 through 993).  Therefore, the Court follows the *Younger* abstention doctrine and shall deny these motions relating to the state court contempt proceedings.

### ii.    Motion to Amend

Lastly, Plaintiff filed a motion to amend his federal complaint.  Normally, a federal court will liberally allow a *pro se* plaintiff to amend his complaint.  However, in this instance it is futile.  A review of the motion to amend clearly establishes Plaintiff still seeks to amend based on a request for declaratory relief that the CLD orders are unconstitutional.  As discussed extensively throughout this opinion, this Court cannot and will not entertain Hayden's ongoing attempts to undo what has already been done in the Alabama state courts.  The Court simply lacks jurisdiction to even consider the request.

## V. Conclusion

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge as follows:

(1) The Motion to Amend Federal Complaint (Doc. 55) be **DENIED**.

(2) Defendants William B. Cashion, Western Steel Inc., and Merchants Commercial Bank's  motions to dismiss (Docs. 25 and 42) be **GRANTED**.

(3) The Motion to Dismiss (Doc. 24) be **GRANTED in part** and **DENIED as moot in part**.  The motion should be **GRANTED** as to the claims against Defendants Anne-Marie Adams, Houston Brown, Scott Donaldson, James Allen Main, Terry A. Moore, Thomas Francis Parker, Craig Sorrell Pittman, Gregory Shaw, Lyn Stuart, Terri Willingham Thomas, William C. Thompson, Robert S. Vance, Jr., J. Scott Vowell, and Alisa Kelli Wise.  The motion should be **DENIED as moot** as to the request to dismiss the claims against Roy Moore in his individual capacity since Plaintiff voluntarily dismissed the individual capacity claims.

(4) The Motion to Dismiss (Doc. 50) be **GRANTED** and the claims against Roy Moore in his official capacity be dismissed.

(5) The Motion to Dismiss (Doc. 35) filed by Joyce Vance be **GRANTED** and the alternative Motion for Summary Judgment be **DENIED as moot**.

(6) The Motion to Dismiss (Doc. 37) filed by the United States' and U.S. Department of Justice be **GRANTED**.

(7) The federal claims in the original and amended complaint be **DISMISSED with prejudice**.

(8) The court decline supplemental jurisdiction over the state law claims and those be **DISMISSED without prejudice**.

(9) Plaintiff's remaining motions (Doc.1, Doc. 41, and Doc. 53) be **DENIED**.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation on or before **February 8, 2016**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 25th day of January, 2016.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE